UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

CIVIL ACTION NO: 4:10-CV-01229-CWH

| | |
|---|---|
| Robert C. Harrison, )<br>)<br>  Plaintiff, )<br>)<br>  vs. )<br>)<br>The Vanguard Group, Inc., )<br>)<br>  Defendants. )<br>) | **MEMORANDUM IN OPPOSITION TO<br>DEFENDANT'S MOTION TO DISMISS** |

Plaintiff Robert C. Harrison, by and through his undersigned counsel, respectfully submits this Memorandum in Opposition to Defendant's Motion to Dismiss pursuant to Local Civil Rules 7.05 and 7.06, DSC. For the reasons set forth below, Plaintiff would show that Defendant's Motion to Dismiss should be denied as a matter of law.

## NATURE OF THE CASE

This case involves claims of breach of contract, breach of fiduciary duty and negligence on the part of Defendant Vanguard arising out of Vanguard's erroneous deposit of $450,000.00, which was intended to fund a new account established by Plaintiff, into a preexisting account subject to seizure by the Internal Revenue Service (hereinafter "IRS"). Although Vanguard acknowledged its mistake in writing to Plaintiff and promised to rectify its error, Vanguard failed and refused to do so, precipitating this lawsuit.

## STATEMENT OF THE FACTS

In or about February of 2007, the Internal Revenue Service (hereinafter "the IRS") instituted criminal forfeiture proceedings as a result of its investigation into allegations of illegal gambling operations conducted by Harrison Amusement Co., Inc. (hereinafter "the company") in

North and South Carolina. Plaintiff Robert Harrison was part owner of this company, and at the time of the IRS filings, Plaintiff lived in the State of Texas. His father, Otis Harrison, lived in South Carolina and conducted the daily business operations of the company.

In its filing, the IRS identified numerous properties for which it sought an Order of Forfeiture. The property identified included, *inter alia*, a Vanguard Group Account ending in 7326 (hereinafter "the 7326 account"), in the name of Plaintiff Robert C. Harrison. The 7326 account contained funds the IRS contended were related to the company's video poker and gaming operations. Plaintiff was served with the Verified Complaint and was aware that the government was seeking forfeiture of the 7326 account. Settlement negotiations with the IRS began almost immediately.

During the settlement process, Plaintiff needed to liquidate various personal and non-gaming, business assets not related to the alleged gaming operations of the company.. Plaintiff's father also sold similar assets and deposited the proceeds of his sales into a new Vanguard account to avoid intermingling these funds with the company's funds, which were also on deposit in separate Vanguard accounts, subject to IRS seizure. Obviously, it was imperative to the Harrisons segregate gaming funds from personal and non-gaming, business funds. As such, on or about May 14, 2007, in furtherance of this understandable and legitimate aim, Plaintiff opened a new prime money market fund account with Vanguard in his individual name. In order to open this account, Harrison completed a the necessary forms provided to him by Vanguard, and he delivered to Vanguard his check in the amount of $450,000.00, representing funds derived solely from the sale of non-gaming assets not subject to IRS seizure. Plaintiff received from Vanguard a new account confirmation and a new account number for these newly-deposited funds.

Nearly one week after opening the new account and making the substantial deposit, Plaintiff was informed by Vanguard that his money had erroneously been deposited into the existing 7326 account, instead of being placed into the newly-created, personal account. Thus, the $450,000.00 was now in an account that was the subject of a Seizure Warrant. Vanguard assured Plaintiff, both orally and in writing, that the mistake would be corrected and the deposit reversed. However, Vanguard never made good on its promises of performance, and Plaintiff has not been refunded his money or received a credit on his new account.

## STANDARD OF REVIEW

The Supreme Court has outlined the standard the Court should use when addressing a motion to dismiss under Rule 12(b)(6), FRCP. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, (2007). In order to survive a motion to dismiss, a complaint must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. Stated differently, to avoid dismissal under Rule 12(b)(6), FRCP, a plaintiff must only nudge his "claims across the line from conceivable to plausible." Id.

When reviewing a motion to dismiss, the Court must accept as true all well-pleaded allegations and view the complaint in a light most favorable to the plaintiff. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994), *cert. denied*, 514 U.S. 1107 (1995). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Moreover, if the complaint alleges each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove those claims. Twombly, 550 U.S. at 562.

**ARGUMENT**

I.  MATTERS OUTSIDE OF THE PLEADINGS SHOULD NOT BE CONSIDERED BY THE COURT FOR PURPaOSES OF DEFENDANT'S RULE 12(b)(6) MOTION.

A motion to dismiss made pursuant to Rule 12(b)(6), FRCP, must be based solely upon the pleadings. In its evaluation, the Court should consider "the complaint in its entirety, as well as those documents attached to the complaint along with any that are integral and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). While the Court may go beyond these documents in a Rule 12(b)(6) proceeding, if it does so, it must convert the proceeding to one for summary judgment, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Rule12(d), FRCP.

In its Memorandum in Support of its Motion to Dismiss, Vanguard requests this Court consider numerous documents which are not properly before the Court and which should not be considered by the Court in addressing Vanguard's Rule 12(b)(6) Motion. The facts, as alleged by Vanguard in its Motion and supporting Memorandum, are not contained in the Complaint or the exhibits attached thereto. As such, these additional facts are not properly considered in the context of a Rule 12(b)(6) motion. See Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 n. 7 (4th Cir.1988) (noting that the district court's reliance on exhibits attached to the moving party's motion was improper but not reversible because "the facts to which the court so referred were either alleged in the amended complaint or contained in the exhibits thereto").

Based upon the foregoing, Plaintiff requests the Court not consider the extraneous materials presented by Defendant Vanguard for purposes of the Rule 12(b)(6) Motion filed by Vanguard. If the Court does consider these materials, Plaintiff respectfully requests notice that

the Motion will be converted to a summary judgment motion and a reasonable opportunity to present additional material.

II. WHETHER THE FUNDS ERRONEOUSLY DEPOSITED INTO THE EXISTING VANGUARD ACCOUNT WERE UNLAWFULLY OR ILLEGALLY OBTAINED IS AN ISSUE OF FACT THAT PRECLUDES DISMISSAL UNDER RULE 12(b)(6).

In its Memorandum in Support of its Motion to Dismiss, Vanguard avers that Plaintiff "attempts to capitalize on a clerical error by Vanguard to recover funds to which he has admitted he has no lawful claim." [Memo. in Support of Motion to Dismiss, at p. 5]. Essentially, Vanguard urges this Court to dismiss Plaintiff's Complaint on the grounds that the funds, which Vanguard admits were wrongfully deposited, were illegally obtained by Plaintiff, and therefore, despite its own error, Plaintiff is not entitled to his money. For numerous reasons, this contention is an improper basis for dismissal.

In order to dismiss Plaintiff's Complaint on this ground, the Court would be required to make a factual finding that the $450,000.00, which Vanguard erroneously deposited into the existing Vanguard Group Account constituted the proceeds of illegal activity. As an initial matter, Plaintiff vehemently denies this allegation. Through discovery, Plaintiff will establish the legitimate and lawful source of these funds, which were not related in any manner to the video poker operations of Harrison Amusement Co., Inc. Plaintiff will also establish that the funds correctly deposited by his father, derived in precisely the same manner, were not seized by the IRS. It is solely the misconduct of Vanguard which has caused this loss to Plaintiff.

Nonetheless, this is precisely the type of factual dispute which precludes dismissal under Rule 12(b)(6), FRCP. As set forth above, in ruling on a motion to dismiss, the Court should not undertake to decide issues of fact; instead, the Court is required to evaluate the sufficiency of the Complaint based solely upon the allegations made therein.

Based on the above, Vanguard's contention that the funds, which it admittedly mishandled, were illegally obtained by Plaintiff is not a proper basis for dismissal. Instead, such an assertion creates an issue of fact which Plaintiff categorically disputes. Therefore, the Motion to Dismiss filed by Defendant Vanguard should be denied.

III.   THE SETTLEMENT AGREEMENT WITH THE IRS DOES NOT JUDICIALLY ESTOP PLAINTIFF TO ASSERT CLAIMS AGAINST VANGUARD FOR ITS MISHANDLING OF FUNDS.

The doctrine of judicial estoppel "precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996) (quoting John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28-29 (4th Cir.1995) (citations and internal quotation marks omitted)). Importantly, judicial estoppel functions to maintain the integrity of the court system, not to protect the interests of the litigants. Lowery, 92 F.3d at 223 n.3.

While the specific requirements of judicial estoppel have not been clearly articulated by the courts, the Fourth Circuit Court of Appeals has set forth three elements that must be established before the doctrine can be invoked: (1) an inconsistent factual position taken in prior litigation; (2) acceptance of the prior inconsistent position by the previous court; and (3) an intent by the party to deliberately mislead the court in order to gain unfair advantage. See Lowery, 92 F.3d at 223-24.

  A.   The Current Position Taken By Plaintiff Is Not Inconsistent With Any Prior Position Taken By Plaintiff.

The first element of judicial estoppel requires that the party sought to be estopped be seeking to adopt a position that is inconsistent with a stance taken in prior litigation, and the position sought to be estopped must be one of fact rather than law or legal theory. Id.; see also,

6

Allen v. Zurich Ins. Co., 667 F.2d 1162, 1167 (4th Cir. 1982) (applying judicial estoppel when prior position was "completely at odds" with later position). The doctrine of judicial estoppel only applies when the positions are wholly inconsistent; that is, "the truth of one must necessarily preclude the truth of the other." Rand G. Boyers, Comment, Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel, 80 Nw. U. L. Rev. 1244, 1263 (1986) (copy attached as **Exhibit A**).

In this case, Plaintiff alleges that Defendant Vanguard erroneously deposited $450,000.00 into the existing 7326 account which was subject to an order of seizure, rather than into the new account as Plaintiff directed. Vanguard contends that this position is inconsistent with a prior position taken by Plaintiff in certain forfeiture proceedings before the North Carolina District Court. Essentially, Vanguard contends that Plaintiff admitted in the prior litigation that all the funds in the 7326 account were subject to seizure and therefore illegally obtained by Plaintiff. Specifically, Vanguard points to a Settlement Agreement filed in the forfeiture suit, in which Plaintiff consented to the forfeiture of the 7326 account with Vanguard. Notably, Plaintiff was not a party to the forfeiture proceedings, and he was merely identified as a "Claimant" in the Settlement Agreement.

Further, the Settlement Agreement does not constitute a sworn statement given by Plaintiff in a prior proceeding as is required to establish judicial estoppel. See Lowery, 92 F.3d at 223. ("Judicial estoppel is properly defined as a bar against the alteration of a factual assertion that is inconsistent with *a position sworn to and benefitted from in an earlier proceeding*.") (quoting Mark J. Plumer, Note, Judicial Estoppel: The Refurbishing of a Judicial Shield, 55 Geo. Wash. L.Rev. 409, 435 (1987)) (emphasis supplied); see also, 28 AM.JUR.2d, Estoppel and Waiver § 74 (2010) ("a party in a judicial proceeding is barred from denying or contradicting

7

*sworn statements* made therein") (emphasis supplied) (copy attached as **Exhibit B**). The Settlement Agreement was not a pleading, affidavit or other sworn statement given by Plaintiff; it was a document prepared by attorneys for the United States, and Plaintiff was merely a signatory.

Moreover, the alleged prior inconsistent statement is not inconsistent with Plaintiff's current allegations against Vanguard. At its core, Plaintiff's claims are that but for Defendant's error and admitted mishandling of funds, the $450,000.00 would have been placed into a new account that would not be the subject of the ongoing forfeiture proceedings. In May of 2007 when Vanguard made this critical error, Plaintiff was well aware of the government's investigation and allegations of illegal gambling against his company. Indeed, the government had already specifically identified the 7326 account as property it believed to be subject to forfeiture. As such, Plaintiff has never contended that the 7326 account was not subject to forfeiture. Defendant Vanguard attempts to blur the distinction between the account itself and the subsequent, erroneous deposit of $450,000.00 into that account. This distinction is crucial.

During the settlement process, Plaintiff liquidated various assets which were wholly unrelated to his video poker business which was the target of the government's investigation. After liquidating these assets, Plaintiff wished to establish a new Vanguard account and planned to fund the account with the $450,000.00 proceeds. However, Vanguard mishandled the funds and erroneously deposited them into an existing Vanguard Group account, thus subjecting them to forfeiture. The terms of the Settlement Agreement, namely Plaintiff's stipulation that the existing account was subject to forfeiture, is not in any way inconsistent with his current position that the funds never should have been placed into the existing account.

Finally, the purported inconsistent statement is not one of fact, but rather, it constitutes a conclusion of law which cannot support the imposition of judicial estoppel. See Tenneco Chemicals, Inc. v. William T. Burnett & Co., Inc., 691 F.2d 658, 664-65 (4th Cir. 1982) (noting the differences between inconsistent statements of fact and inconsistent statements of law); see also, Boyers, supra, at 1262 ("the doctrine of judicial estoppel applies only to factual positions; expressions of opinion and assertions of legal conclusions cannot trigger application of the doctrine"). The alleged inconsistent statement is that Plaintiff's existing Vanguard account was subject to forfeiture pursuant to various federal statutes. Whether property is properly forfeited under these statutes is a conclusion of law that must be determined by the Court based upon an analysis of the facts.

Based upon the forgoing, Defendant Vanguard has failed to establish a prior inconsistent statement by Plaintiff which would support the invocation of judicial estoppel. As set forth below, even if Vanguard could establish a prior inconsistent statement, which it cannot, it has failed to establish the remaining two elements of the doctrine.

    B.    THE ALLEGEDLY INCONSISTENT STATEMENT WAS NOT ACCEPTED BY THE NORTH CAROLINA DISTRICT COURT.

To establish judicial estoppel, the alleged prior inconsistent statement must have been accepted by the prior court. Lowery, 92 F.3d at 224; Teledyne Industries, Inc. v. N.L.R.B., 911 F.2d 1214, 1218 (6th Cir. 1990). "The insistence upon a court having accepted the party's prior inconsistent position ensures that judicial estoppel is applied in the narrowest of circumstances." Lowery, 92 F.3d at 224. Defendant Vanguard proffers an alleged prior inconsistent statement in the form of a Settlement Agreement. In its supporting memorandum, Vanguard makes the following conclusory assertion: "Harrison expressly admitted that the $450,000.00 was related to criminal activity when he agreed that these funds were 'subject to forfeiture.'" [Memo. in

9

Support of Motion to Dismiss, at p. 7]. However, the plain language of the Settlement Agreement makes no such admission, and more importantly, the forfeiture orders executed by the district court make no such finding of fact or reference any such admission. There is no indication whatsoever that the allegedly inconsistent position contained in the Settlement Agreement was accepted by the North Carolina court for purposes of judicial estoppel.

In similar circumstances, the Sixth Circuit Court of Appeals has held that consent orders that do not contain findings of fact or admissions, do not, as a matter of law, constitute acceptance by the court. Teledyne, 911 F.2d at 1218-19. "Settlements, even in the form of an agreed order, ordinarily do not constitute judicial acceptance of whatever terms they contain" Id. at 1219; see also, Lowery, 92 F.3d at 225 ("judicial estoppel does not apply to the settlement of an ordinary civil suit because there is no 'judicial acceptance' of anyone's position"); Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir. 1980) ("settlement neither requires nor implies any judicial endorsement of either parties' claims or theories, and thus, a settlement does not provide the prior success necessary for judicial estoppel"). The facts of this case present an even stronger basis for finding there was no acceptance by the prior court since the Settlement Agreement was not in the form of a consent order and was not presented to the Court for approval. The subsequent forfeiture orders contain no indication that the court accepted or endorsed the allegedly inconsistent statement. Indeed, there is no reference whatsoever to any admission regarding the source of the $450,000.00 mishandled and erroneously deposited by Vanguard.

Based upon the foregoing, Plaintiff is not judicially estopped to assert his claims against Vanguard. Controlling case law clearly dictates that judicial estoppel applies only when the court accepts a prior inconsistent position, which did not occur here. Thus, even if this Court

were to determine a prior inconsistent statement was made by Plaintiff, there is no evidence that such a statement was accepted by the district court.

        C.      <u>Plaintiff Did Not Intentionally Misled The Court To Gain An Unfair Advantage.</u>

The third and final element of judicial estoppel requires a showing that the party sought to be estopped "intentionally misled the court to gain unfair advantage." <u>Tenneco</u>, 691 F.2d at 665. This final element is the "determinative factor" in the application of judicial estoppel to a particular case. <u>Id.</u>; <u>Lowery</u>, 92 F.3d at 224. Defendant Vanguard has presented no evidence establishing an intent by Plaintiff to mislead this Court or the North Carolina court in an attempt to gain unfair advantage. Nonetheless, Defendant Vanguard would have this Court find an intent to mislead based upon Plaintiff's alleged "decision to omit from his Complaint any reference to the substance of the Forfeiture Proceedings." [<u>Memo. in Support of Motion to Dismiss</u>, at p. 8]. This assertion is flawed in several respects.

A review of the Complaint filed on behalf of Plaintiff reveals that Plaintiff made no effort to conceal the fact that the IRS had issued a Seizure Warrant for his bank account. [<u>Complaint</u>, at p. 2, ¶ 10]. Admittedly, Plaintiff did not detail the substance and history of the forfeiture proceedings, nor was he required to do so. The substance of those proceedings is wholly irrelevant in this case, and Defendant Vanguard brings them to the Court's attention in an attempt to inflame the Court and prejudice Plaintiff with allegations of illegal conduct. The issues raised by the United States government in those proceedings have no bearing upon Plaintiff's claims against Vanguard. Here, the pivotal issues are whether Vanguard was contractually obligated to open and fund a new account as Plaintiff directed and whether, under the circumstances, its failure to do so constituted a breach of Vanguard's duties owing to Plaintiff.

For these reasons, Plaintiff is not judicially estopped to assert the causes of action alleged in his Complaint. Defendant Vanguard has not established an intent by Plaintiff to deliberately mislead this Court or the North Carolina court, and therefore, judicial estoppel is inapplicable as a matter of law.

IV.  PLAINTIFF HAS SUFFERED SIGNIFICANT DAMAGES SUFFICIENT TO STATE A CAUSE OF ACTION AGAINST VANGUARD.

As set forth above and in his Complaint, Plaintiff has incurred significant damages as a result of Defendant Vanguard's breach of contract, breach of fiduciary duty and negligence. Specifically, as a result of Vanguard's mishandling of his funds, Plaintiff was deprived of the use and benefit of $450,000.00. These funds, which were intended to fund a new account with Vanguard, were not otherwise subject to seizure by the IRS. However, because of Vanguard's error, Plaintiff was not able to retrieve the funds, as the existing Vanguard Group acount was incontestably subject to the Seizure Warrant.

Despite its acknowledgement of error, Vanguard avers that Plaintiff has suffered no damages since "these funds were owed to the federal government irrespective of any conduct of Vanguard." [Memo. in Support of Motion to Dismiss, at p. 9]. For the following reasons, this is not a proper basis for dismissal.

First, the assertion that the funds were owed to the government is demonstrably false, and Vanguard has presented no evidence to establish otherwise. As set forth more fully above, the funds were not the proceeds of illegal gaming activities. Rather, the $450,000.00 constituted monies received by Plaintiff after the sale of his personal and non-gaming, business assets. As alleged in his Complaint, these funds were wholly unrelated to the IRS investigation and were separate and distinct from the funds already on deposit in the Vanguard Group account.

Further, Vanguard's assertion that Plaintiff has suffered no damages because the funds were owed to the government creates an issue of fact which Plaintiff vigorously disputes. In these circumstances, dismissal is inappropriate.

Based on the above, the Motion to Dismiss should be denied. The $450,000.00 erroneously deposited and admittedly mishandled by Vanguard was not otherwise subject to forfeiture, and therefore, Plaintiff has suffered substantial losses. As such, Plaintiff has stated a claim for which relief may be granted.

## CONCLUSION

For all of the reasons herein, the Motion to Dismiss filed by Defendant Vanguard should be denied. Plaintiff is not judicially estopped to assert his claims against Vanguard since he made no prior inconsistent statement, and the alleged prior inconsistent statement was not accepted by the North Carolina court. Further, there is no evidence whatsoever establishing an intent by Plaintiff to mislead either court. The Complaint adequately states causes of action for which relief may be granted, and Defendant's assertions to the contrary merely create issues of fact which cannot support dismissal. Finally, in ruling on this Motion, Plaintiff respectfully requests the Court not consider the extraneous documents presented by Defendant Vanguard, and if the Court does consider these materials, Plaintiff requests a reasonable opportunity to present additional materials for the Court's consideration.

**[SIGNATURE PAGE FOLLOWS]**

                Respectfully submitted,

                TURNER PADGET GRAHAM & LANEY P.A.

Myrtle Beach, South Carolina      **BY:**    *s/ Audra M. Byrd*

                        **Edward R. Cole**

July 1, 2010                        Federal I.D. Number: 00204

                        **ECole@TurnerPadget.com**

                        **Audra M. Byrd**

                        Federal I.D. Number: 10163

                        **AByrd@TurnerPadget.com**

                        Post Office Box  2116

                        Myrtle Beach, South Carolina  29578

                        Direct Telephone:  (843) 213-5505

                        Direct Facsimile:   (843) 213-5605

                **ATTORNEYS FOR PLAINTIFF ROBERT C. HARRISON**