IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
CIVIL ACTION NO: 4:10-CV-01229-CWH

| | |
|---|---|
| ROBERT C. HARRISON,<br><br>    Plaintiff,<br><br>v.<br><br>THE VANGUARD GROUP, INC.,<br><br>    Defendant. | **DEFENDANT'S RULE 26(f) REPORT AND INFORMATION PURSUANT TO LOCAL CIVIL RULE 26.03** |

Defendant, The Vanguard Group, Inc. ("Defendant") submits the following report to the Court pursuant to Fed R. Civ. P. 26(f), Local Civil Rule 26.03 and the Court's Pre-Scheduling Order entered on November 18, 2010 (the "Pre-Scheduling Order"):

  **I.**  **RULE 26(F) REPORT OF DEFENDANT**

  1.  Rule 26(f) Conference Timing and Content

Pursuant to the Pre-Scheduling Order, counsel for Defendant and Plaintiff did not confer prior to the submission of their respective 26(f) Reports.

  2.  Discovery Plan

    i.  Rule 26(a) Disclosures

Defendant has served on Plaintiff and e-mailed to Judge Houck's chambers the disclosures required under Rule 26(a)(1), in accordance with the Pre-Scheduling Order.

    ii.  Subjects on Which Discovery May be Needed

Defendant anticipates that discovery will be needed regarding the following subjects:

    1.  Plaintiff's illegal conduct and the sources and uses of funds related to the same;

2. The settlement agreement entered into by Plaintiff and the United States (including all negotiations related thereto), whereby Plaintiff agreed to forfeit the money he is now seeking to recover from Vanguard;

3. The sources and uses of the funds that Plaintiff claims he forfeited as a result of Vanguard's conduct, including any all financial accounts in which these funds were ever located;

4. Plaintiff's relationships with various enterprises, including, without limitation, Harrison Amusement Company, Inc., Harrison Music Co., Inc. and Shamrock, LLC;

5. Plaintiff's relationships with various individuals believed to be involved with his illegal gambling enterprise;

6. The United States' investigation of Plaintiff's criminal conduct;

7. The United States' conduct in seizing and prosecuting various forfeiture actions against numerous properties in which Plaintiff had an interest; and

8. Such other, further matters as may be revealed upon further investigation and discovery.

iii. Anticipated Completion of Discovery & Phases or Limits on Discovery

Defendant does not object to the assertion in Plaintiff's 26(f) Report that 180 days from entry of a Scheduling Order will be needed to complete discovery. Defendant does not anticipate the need for any phases or limitations on discovery.

iv. Electronically Stored Information

At this time, Defendant is unaware of any specific issues related to electronic discovery.

     v. <u>Claims of Privilege and Trial-Preparation Materials</u>

  Defendant anticipates the potential need to depose Plaintiff's former counsel who represented him in the forfeiture proceedings brought by the United States. Because Plaintiff's decision to enter into a settlement agreement with the United States directly precipitated the forfeiture that Plaintiff now seeks to attribute to Vanguard, the basis for this decision is at issue in the instant lawsuit and uniquely within the personal knowledge of Plaintiff and his former counsel. Discovery will likely involve inquiries into matters discussed by and between Plaintiff and his legal counsel in the course of the forfeiture proceedings. Vanguard will take the position that such discussions, to the extent they are used as a justification for Plaintiff's decision to enter the Settlement Agreement, are not privileged in this lawsuit.

     vi. <u>Changes to Limitations on Discovery</u>

  At this time, Defendant is unaware of any changes that should be made to the limitations on discovery imposed by the Federal Rules of Civil Procedure or any Local Civil Rules.

     vii. <u>Other Orders Pursuant to 26(c), 16(b) or 16 (c)</u>

  At this time, Defendant believes that the standard Scheduling Order utilized by this Court will be sufficient to accommodate the needs of the parties.

  II. **INFORMATION PROVIDED PURSUANT TO LOCAL CIVIL RULE 26.03**

  1. ***Short Statement of the Facts of this Case***. In 2006, the United States began investigating Plaintiff in connection with an illegal gambling enterprise that Plaintiff operated in North and South Carolina. In December 2006, the United States seized various assets owned by Plaintiff, and subsequently, the United States commenced forfeiture proceedings against Plaintiff's assets, including accounts he held through Defendant. In May 2007, Plaintiff opened a new account with Defendant, which he funded with $450,000. For reasons that will be

developed through discovery in this case, Defendant deposited these funds into an old account in Plaintiff's name that was the subject of both a seizure warrant and the forfeiture proceedings, instead of depositing the funds into Plaintiff's new account. Although Plaintiff contends that this act by Defendant subjected the funds to forfeiture, the United States later obtained a warrant that covered *both* Plaintiff's old account *and* Plaintiff's new account, effectively freezing all of Plaintiff's assets held by Defendant.

Instead of contesting the seizure and eventual forfeiture of the $450,000 to the United States, Plaintiff knowingly and voluntarily consented to forfeit these funds in a settlement agreement executed and filed with the United States District Court for the Middle District of North Carolina on March 6, 2008. In the settlement agreement – which was witnessed by Plaintiff's counsel – Plaintiff stipulated and agreed that the properties forfeited, including the $450,000, were involved with or traceable to a variety of criminal violations. After willingly forfeiting the funds and waiving any and all claim thereto, Plaintiff brought the current lawsuit, alleging that Vanguard is to blame for Plaintiff's forfeiture of the funds.

### 2. *The Names of Fact Witnesses Likely to be Called by Defendant and Brief Summary of Their Expected Testimony.*

      i. <u>Robert C. Harrison</u>: Plaintiff will testify concerning his involvement with the illegal operations that led to the eventual forfeiture of his property. Plaintiff will also testify concerning the sources and uses of the $450,000 he now seeks as damages from Defendant. Further, Plaintiff will testify regarding his conversations with Vanguard representatives concerning the opening of his new account and the funds deposited into the old account. He will further testify regarding the reasons he agreed to forfeit funds that he now contends were lawfully obtained and his motivations for entering

into the settlement agreement with the United States in the forfeiture proceedings.

ii. <u>Rosemarie A. Sciarretta</u>: Ms. Sciarretta will testify concerning her personal knowledge of the events surrounding the opening of Plaintiff's account in May 2007 and the United States' seizure and forfeiture of various funds in Plaintiff's accounts.

iii. <u>Otis T. Harrison</u>: Mr. Harrison is expected to testify concerning the funds deposited by Plaintiff and, to the extent he has knowledge, the involvement of Plaintiff in illegal operations that led to the eventual forfeiture of Plaintiff's property. Mr. Harrison is also expected to testify, to the extent he has knowledge, concerning the methods and means Plaintiff used to secrete illegally obtained funds.

iv. <u>Rose Harrison</u>: Ms. Harrison is expected to testify concerning the funds deposited by Plaintiff and, to the extent she has knowledge, the involvement of Plaintiff in illegal operations that led to the eventual forfeiture of Plaintiff's property. Ms. Harrison is also expected to testify, to the extent she has knowledge, concerning the methods and means Plaintiff used to secrete illegally obtained funds.

v. <u>Special Agent Robert Norlander</u>: Special Agent Norlander is expected to testify regarding his investigation of Plaintiff and Plaintiff's illegal activity that led to the seizure and forfeiture of Plaintiff's property. Special Agent Norlander is also expected to testify concerning the sources and uses of Plaintiff's funds in various accounts and the United States' seizure and pursuit of forfeiture of the same.

      vi. <u>Lynne P. Klauer</u>: Ms. Klauer was the attorney with the U.S. Attorney's office chiefly responsible for pursuing the forfeiture action against Plaintiff's assets.

3. ***The Names and Subject Matter of Expert Witnesses***. Defendant has not yet identified any expert witnesses, but it reserves the right to supplement this response.

4. ***A Summary of Defendant's Defenses with Statutory and/or Case Citations Supporting the same***.

      i. <u>Failure to Mitigate Damages</u>: "As a general rule, one who is injured by the acts of another is required to do those things an ordinary prudent person would do under similar circumstances to avoid damages which are reasonably avoidable." *Tri-Continental Leasing Corp. v. Stevens, Stevens & Thomas, P.A.*, 338 S.E.2d 343, 364 (S.C. Ct. App. 1985). Plaintiff failed to mitigate his alleged damages by failing to contest the forfeiture of the funds he now seeks to recover from Vanguard.

      ii. <u>Illegality/Unclean Hands/In Pari Delicto</u>: "It is a well founded policy of law that no person be permitted to acquire a right of action from their own unlawful act and one who participates in an unlawful act cannot recover damages for the consequence of that act. This rule applies at both law and in equity and whether the cause of action is in contract or in tort." *Jackson v. Bi-Lo Stores*, 437 S.E.2d 168, 170 (S.C. Ct. App. 1993). Plaintiff cannot recover from Vanguard funds that he has admitted were the product of illegal activity.

      iii. <u>Judicial Estoppel</u>: "The doctrine of judicial estoppel prevents Plaintiffs from switching positions." *Colleton Regional Hosp. v. MRS Medical*

*Review Sys.*, 866 F. Supp. 896, 900 (D.S.C. 1994). It is "designed to prevent litigants from 'blowing hot and cold' or 'playing fast and loose' with the judicial process." *Id.*; *see also Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166-67 (4th Cir. 1982). Plaintiff's position in this lawsuit regarding the legitimacy of the funds he forfeited to the United States is fundamentally at odds with the representations he made to the Middle District of North Carolina in the forfeiture proceedings.

iv. <u>Waiver/Laches</u>: Neglect of a claim for an unreasonable an unexplained length of time may subject the claim to the equitable defense of laches. *Thomas v. McNeill*, 135 S.E.2d 643, 645 (S.C. 1926). If Plaintiff had a lawful claim to the funds, he should have asserted it in the forfeiture proceedings; he cannot now assert a claim against Defendant for these funds.

v. <u>No Damages</u>: "The burden of proving damages for breach of a contract rests on the plaintiff. … A judgment for money damages must be warranted by the proof of the party in whose favor it is rendered." *Jackson v. Midlands Hum. Res. Ctr.*, 374 S.E.2d 505, 506-07 (S.C. Ct. App. 1988). Plaintiff was not damaged by Defendant's conduct because he voluntarily relinquished any claim to the forfeited funds and also because all of his mutual fund accounts with Vanguard were seized by the United States.

vi. <u>Intervening Willful or Negligent Acts</u>: An injured party cannot recover under a negligence theory when his own intervening acts proximately caused the injury about which he complains. *Bishop v. S.C. Dep't of Mental Health*, 502 S.E.2d 78, 83-84 (S.C. 1998). Plaintiff's alleged

       damages are proximately caused by his own conduct – namely, his willful failure to contest the forfeiture of the funds he now seeks to recover from Vanguard – and not any alleged act by Vanguard.

   vii. <u>Comparative Negligence</u>: "[A] plaintiff in a negligence action may recover damages if his or her negligence is not greater than that of the defendant." *Nelson v. Concrete Supply Co.,* 399 S.E.2d 783, 784 (S.C. 1991). To the extent that Vanguard's conduct was negligent, Plaintiff was more negligent than Vanguard in failing to contest the forfeiture of the funds he now seeks to recover from Vanguard.

   viii. <u>Economic Loss Doctrine</u>: "The purpose of the [economic loss] doctrine is to stem not only unlimited liability by limiting parties to the terms of their agreements, but also to serve as a demarcation line between contract and tort." *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.,* 843 F. Supp. 1027, 1049 (D.S.C. 1994). Plaintiff's alleged losses in this case are purely economic in nature; therefore, he cannot recover for any such alleged damages in tort.

5. ***Dates for 26(a)(2) Expert Disclosures and Completion of Discovery.***

   i. Defendant does not object to Plaintiff's providing an expert disclosure on or before February 15, 2011; however, Defendant respectfully requests an additional 45 days to respond to Plaintiff's expert disclosure. This time will be needed for Defendant's expert to review and analyze Plaintiff's report and respond to the same.

   ii. Defendant does not object to Plaintiff's proposed deadline of May 31, 2011 to conclude discovery.

6.     *Special Circumstances Affecting Preparation of the Scheduling Order*.

Defendant is aware of no special circumstances affecting the timeframes for the issuance of the initial Scheduling Order by the Court.

7.     *Additional information pursuant to Local Civil Rule 16.01 or otherwise requested by the Court*.

Defendant is aware of no additional information at this time.

This 3rd day of January, 2011.

/s/ David C. Kimball
Benjamin A. Johnson
Fed. ID No. 2186
E-Mail: bjohnson@rbh.com

David C. Kimball
Fed. ID No. 10475
E-Mail: dkimball@rbh.com

**ROBINSON, BRADSHAW & HINSON**
140 East Main Street, Suite 420
Rock Hill, South Carolina 29730
Telephone: 803-325-2910
Facsimile: 803-325-2929

*Attorneys for Defendant*