UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
CIVIL ACTION NO: 4:10-CV-01229-CWH

| | |
|---|---|
| Robert C. Harrison, ) ) Plaintiff, ) ) vs. ) ) The Vanguard Group, Inc. ) ) Defendant. ) ) | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Robert C. Harrison, by and through his undersigned counsel, respectfully submits this Response in Opposition to Defendant's Motion for Summary Judgment pursuant to Local Civil Rules 7.05 and 7.06, DSC, as well as Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff would show that Defendant's Motion for Summary Judgment should be denied.

### NATURE OF THE CASE

This case involves claims of breach of contract, breach of fiduciary duty and negligence on the part of Defendant Vanguard arising out of Vanguard's erroneous deposit of $450,000.00, which was intended to fund a new account established by Plaintiff, into a preexisting account subject to seizure by the United States Attorney's Office. Although Vanguard acknowledged its mistake in writing to Plaintiff and promised to rectify its error, Vanguard failed and refused to do so, precipitating this lawsuit.

### STATEMENT OF THE FACTS

Plaintiff Harrison incorporated Harrison Amusement Co., Inc. (hereinafter "the Company") under the laws of the State of North Carolina in September of 1999. [Dep. of Robert

C. Harrison, Aug. 25, 2011 at 11:5-9]. A true and accurate copy of the deposition of Harrison is attached hereto and incorporated herein by reference as **Exhibit One**. The Company distributed and maintained automatic teller machines, pool tables, jukeboxes, video game machines, and video poker machines in restaurants, bars, and convenience stores. [Harrison Dep. at 12:7-12].

In 2000, the legislature of South Carolina changed the laws regulating video poker machines. [Harrison Dep. at 35:22 – 36:2]. Thereafter, in or about June of 2006, the North Carolina Alcohol Law Enforcement Division opened a formal investigation of allegations that the Company was involved in illegal gambling operations. [Docket Entry 31-3 at 38].[1] As a result of the investigation of the Company, the United States Attorney instituted criminal forfeiture proceedings relating to various assets owned by Plaintiff, the Company, Plaintiff's father (Otis Harrison), and a company owned by Plaintiff's father. At the time of the filings of the United States Attorney, Plaintiff lived in the state of Texas. His father, Otis Harrison, lived in South Carolina and conducted the daily business operations of the Company. [Harrison Dep. at 7:12-14].

In its filings, the United States Attorney's Office identified numerous properties for which it sought an Order of Forfeiture. The property identified included, *inter alia*, a Vanguard Group Account ending in 7326 (hereinafter "the 7326 account"), in the name of Plaintiff Harrison. On December 4, 2006, United States Magistrate Judge P. Trevor Sharp issued a seizure warrant for the 7326 account. [Docket Entry # 31-3 at 95]. The 7326 account contained funds the United States Attorney's Office contended were related to the Company's video poker and gaming operations. Plaintiff was served with the Verified Complaint, and he was aware that the government was seeking forfeiture of the 7326 account and that a seizure warrant for the

---

[1] The Declaration of Robert Nordlander was filed with this Court previously by Defendant and was initially filed with the federal district court for the Middle District of North Carolina on December 5, 2006 in Case Number 1:06-cv-01045-JAB-PTS (M.D.N.C.).

account had been issued. [Harrison Dep. at 112:21 – 113:24]. Settlement negotiations with the United States Attorney's Office began almost immediately.

During the settlement process, the United States Attorney's Office identified a substantial amount of equipment owned by the Company, and it segregated the equipment allegedly used for illegal gambling activities from that used for non-gambling purposes. [Harrison Dep. at 66:3-16]. The non-gambling equipment was placed in a separate warehouse, and Plaintiff had access to and sold that equipment during the settlement negotiations. [Harrison Dep. at 66:3-16; 82:3-9; 83:10 – 84:12]. Plaintiff's father also sold similar assets and deposited the proceeds of his sales into a new Vanguard account to avoid intermingling these funds with other funds, which were also on deposit in separate Vanguard accounts, subject to seizure by the federal government. [Harrison Dep. at 166:5 – 167:7]. Obviously, it was imperative to the Harrisons to segregate gaming funds from personal and non-gaming, business funds.

As such, on or about May 14, 2007, in furtherance of this legitimate aim, Plaintiff opened a new prime money market fund account with Vanguard in his individual name. [Harrison Dep. at 86:13 – 87:12]. In order to open this new account, Harrison completed the necessary forms provided to him by Vanguard, and he delivered to Vanguard his check in the amount of $450,000.00, representing funds derived solely from assets and monies not subject to seizure warrants. [Harrison Dep. at 81:18 – 85:5; 86:13 – 87:12]. Plaintiff received from Vanguard a new account confirmation and a new account number for these newly-deposited funds. [Harrison Dep. at 88:16-22].

Nearly one week after opening the new account and making the substantial deposit, Plaintiff was informed by Vanguard that his money had been erroneously deposited into the existing, frozen 7326 account, instead of being placed into the newly-created, personal account.

[Harrison Dep. at 119:15 – 121:17]. Thus, the $450,000.00 was now in an account that was the subject of a seizure warrant that had been issued for the account in 2006. Vanguard assured Plaintiff, both orally and in writing, that the mistake would be corrected and the deposit reversed. [Harrison Dep. at 119:15 – 121:17]. However, Vanguard never made good on its promises of performance, and Plaintiff has not been refunded his money or received a credit on his new account.

## STATEMENT OF MATERIAL FACTS IN DISPUTE

There are numerous material facts in dispute, including the following:

1. Whether the $450,000.00 erroneously deposited by Vanguard into a seized account would have been seized or forfeited if Vanguard had not made such an error.

2. Whether the $450,000.00 was illegally or unlawfully obtained.

3. Whether Vanguard was contractually required to comply with the plaintiff's request to open a new account.

4. Whether Vanguard breached its duties owed to Plaintiff when it failed to comply with his instructions in opening a new account.

## STANDARD OF REVIEW

### *Standard For Summary Judgment*

The standard for summary judgment is clear; summary judgment is proper where there is no genuine issue of material fact. Rule 56(c), Fed. R. Civ. P. Under Rule 56(c), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Stated differently, summary judgment may be granted, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (1987) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

On a motion for summary judgment, the moving party bears the burden of establishing that there are no genuine issues of material fact. Campbell, Inc. v. N. Ins. Co., 337 F. Supp. 2d 764, 766 (D.S.C. 2004). Once the moving party has met this burden, the burden shifts and the "nonmoving party must come forward with specific facts showing there is a genuine issue for trial." White v. Rockingham Radiologist, Ltd., 820 F.2d 98, 101 (4th Cir. 1987). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." Woodward v. UPS, 306 F. Supp. 2d 567, 571 (D.S.C. 2004) (quoting Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987)).

## ARGUMENT

I.     PLAINTIFF HAS DEMONSTRATED COMPENSABLE DAMAGES.

In its Memorandum in Support of its Motion for Summary Judgment, Vanguard asserts that Plaintiff cannot maintain the present action because he has not sustained compensable damages. [Docket Entry # 31-1 at 8-10]. Essentially, Vanguard urges this Court to grant summary judgment in its favor on the grounds that the funds, which Vanguard admits were wrongfully deposited, were (1) illegally obtained by Plaintiff and (2) would have been seized by the government even if Vanguard had not acted negligently and in breach of its contractual oblilgations in depositing the funds into a seized account. For the reasons set forth below, these

assertions are not supported by the evidence in this case and cannot provide the basis for a grant of summary judgment in favor of Vanguard.

First, Vanguard has failed to establish that the $450,000.00, which Vanguard erroneously deposited into the plaintiff's existing Vanguard account, was illegally obtained. To the contrary, the evidence in this case establishes, at a minimum, a genuine dispute of material fact as to whether the funds erroneously deposited by Vanguard into a seized account were illegally or unlawfully obtained. Through discovery, Plaintiff has established the legitimate and lawful source of these funds, which were not related to the video poker operations of the Company. [Harrison Dep. at 13:14 – 14:23; 46:5-12; 51:23 – 53:10; 58:4-17; 59:11-20; 65:16 – 66:16; 70:14 – 72:9; 73:12-25; 74:22 – 75:9; 80:5-13; 81:8 – 84:21]. In its own Memorandum, Vanguard acknowledges the three sources of the funds: (1) a personal checking account held by Plaintiff at Wachovia, (2) Plaintiff's 2006 personal tax refund from the federal government, and (3) the Company's BB&T operating account. [Docket Entry # 31-1 at 5].

With regard to the Wachovia account, Plaintiff held this personal checking account for many years, dating back to the early 1990's. [Harrison Dep. at 71:21 – 72:9]. A review of the forfeiture complaints and related proceedings filed by the United States Attorney's Office reveals no allegation of illegal activity by the plaintiff or the Company during this time. Plaintiff confirmed, in his sworn deposition, that no assets or funds acquired or generated prior to 2000 were seized by the federal government. [Harrison Dep. at 42:15 – 43:1]. Moreover, the Wachovia account was known to the federal government and never subject to seizure prior to Vanguard's admitted mishandling of Plaintiff's funds. [Harrison Dep. at 156:25 – 157:14].

The second identified source of funds comprising the $450,000.00 in dispute is a check issued to the plaintiff from the United States government, representing the plaintiff's 2006

federal tax refund. The evidence in this case establishes that in 2005, the plaintiff overpaid his estimated taxes to the federal government by $300,534.00. [Harrison Dep. at 54:21 – 55:10]. In his 2006 federal tax return, the plaintiff elected to receive only a portion of his refund ($265,534.00) and requested that the remaining refund owed to him be deferred and applied to the following year. [Harrison Dep. at 55:4-20].

With regard to this money, Vanguard cannot seriously contend that a tax refund check issued by the federal government to the plaintiff, *after* the forfeiture and related proceedings were commenced, constitutes illegally or unlawfully obtained funds. Nonetheless, to confuse the issue and avoid the obvious deficiency of this argument, Vanguard attempts to convince the Court that the plaintiff's income was derived from illegal activity, and therefore, the only way he could have paid the estimated taxes was by using illegally-obtained funds. Thus, Vanguard concludes, the income tax refund check issued by the federal government was subject to forfeiture. The fallacies of this this argument are clear: the tax refund check was issued after the forfeiture proceedings began, and Vanguard has presented no evidence establishing that the estimated taxes paid or the tax refund check issued constitute illegally obtained funds subject to forfeiture. Importantly, the federal tax refund issued to the plaintiff's father at the same time was deposited with Vanguard into his newly-formed account and was not seized by the federal government. [Harrison Dep. at 168:1-6].

The third and final identified source of funds constituting the $450,000.00 erroneously deposited by Vanguard was a check written on an operating account held by the Company at BB&T. The undisputed evidence in this case establishes that this money was derived from the sale of equipment and other assets which the federal government had previously allowed the plaintiff and the Company to keep. [Harrison Dep. at 66:2-16; 82:3-9; 83:10 – 84:12; 93:20 –

94:22; 168:16 – 169:15]. Moreover, Plaintiff has established that the federal government had not previously sought forfeiture or seizure of these funds (or the assets liquidated in order to generate these funds) and had, in fact, allowed Plaintiff to retain the funds. [Harrison Dep. 66:2-16; 74:22 – 75:2; 93:23 – 94:22; 156:25 – 157:14; 167:12- 25]. Significantly, Plaintiff has also established that the funds correctly deposited by his father, derived in precisely the same manner as those mishandled by Vanguard, were not seized by the United States government. [Harrison Dep. at 135:16 – 136:4; 167:1 – 168:6]. Thus, the only reasonable inference is that it is solely the mishandling of funds by Vanguard which has caused this loss to Plaintiff.

At a very minimum, this is precisely the type of genuine issue of material fact in dispute that would preclude summary judgment under Rule 56 of Federal Rules of Civil Procedure. Based on the above, Vanguard's contention that the plaintiff has not sustained any compensable damages is not supported by the evidence in this case and is not a proper basis for summary judgment. Instead, such an assertion creates a dispute regarding an issue of material fact. Therefore, the Motion for Summary Judgment filed by Vanguard should be denied.

II.     PLAINTIFF IS NOT JUDICIALLY ESTOPPED TO ASSERT CLAIMS AGAINST VANGUARD FOR ITS MISHANDLING OF HIS FUNDS.

The doctrine of judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process. <u>Lowery v. Stovall</u>, 92 F.3d 219, 223 (4th Cir. 1996) (quoting <u>John S. Clark Co. v. Faggert & Frieden, P.C.</u>, 65 F.3d 26, 28-29 (4th Cir. 1995) (citations and internal quotation marks omitted). Importantly, judicial estoppel functions to maintain the integrity of the court system, not to protect the interests of the litigants. <u>Lowery</u>, 92 F.3d at 223 n.3.

While the specific requirements of judicial estoppel have not been clearly articulated by the courts, the Fourth Circuit Court of Appeals has set forth three elements that must be established before the doctrine can be invoked: (1) an inconsistent factual position taken in prior litigation; (2) acceptance of the prior inconsistent position by the previous court; and (3) an intent by the party to deliberately mislead the court in order to gain unfair advantage. See Lowery, 92 F.3d at 223-24.

    A.    The Current Position Taken By Plaintiff Is Not Inconsistent With Any Prior Position Taken By Plaintiff.

The first element of judicial estoppel requires that the party sought to be estopped be seeking to adopt a position that is inconsistent with a stance taken in prior litigation, and the position sought to be estopped must be one of fact rather than law or legal theory. Id.; see also, Allen v. Zurich Ins. Co., 667 F.2d 1162, 1167 (4th Cir. 1982) (applying judicial estoppel when prior position was completely at odds with later position). The doctrine of judicial estoppel only applies when the positions are wholly inconsistent; that is, the truth of one must necessarily preclude the truth of the other. Rand G. Boyers, Comment, Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel, 80 Nw. U. L. Rev. 1244, 1263 (1986) (a copy has been previously filed with this Court at Docket Entry # 7-1).

In this case, Plaintiff alleges that Defendant Vanguard erroneously deposited $450,000.00 into the existing 7326 account which was subject to a seizure warrant, rather than into the new account as Plaintiff directed. Vanguard contends that this position is inconsistent with a prior position taken by Plaintiff in certain forfeiture and criminal proceedings before the North Carolina District Court. Essentially, Vanguard contends that Plaintiff admitted in the prior proceedings that all the funds in the 7326 account were subject to seizure and therefore illegally

obtained by Plaintiff. Specifically, Vanguard points to a Plea Agreement filed in the criminal proceedings and a Settlement Agreement filed in the forfeiture suit, in which Plaintiff consented to the forfeiture of the 7326 account.

As an initial matter, the Plea Agreement and hearing relate to the criminal proceedings filed against the plaintiff and are separate and distinct from the forfeiture actions. While the Plea Agreement references the Settlement Agreement entered in the forfeiture actions, there is no indication in the Plea Agreement itself or in the transcript of the hearing on the Plea Agreement that the propriety of the forfeiture of the 7326 account was raised at all. The Plea Agreement provides only that Plaintiff "agree[d] to be bound by the terms of the settlement agreement dated March 6, 2008." [Docket Entry # 31-3 at 6]. As such, the assertion by Vanguard that Plaintiff made any statement whatsoever regarding the propriety of the seizure and forfeiture of the 7326 account in the criminal proceedings is demonstrably false.

Furthermore, it must be noted that Plaintiff was not a party to the forfeiture proceedings, and he was merely identified as a "Claimant" in the Settlement Agreement. The parties in the forfeiture proceedings were the United States of America and various properties for which the government seeks forfeiture. This is an important consideration in the judicial estoppel analysis, as the doctrine applies only to parties in previous litigation.

Additionally, the Settlement Agreement does not constitute a sworn statement given by Plaintiff in a prior proceeding as is required to establish judicial estoppel. See Lowery, 92 F.3d at 223 ("Judicial estoppel is properly defined as a bar against the alteration of a factual assertion that is inconsistent with *a position sworn to and benefitted from in an earlier proceeding*.") (quoting Mark J. Plumer, Note, Judicial Estoppel: The Refurbishing of a Judicial Shield, 55 Geo.

Wash. L.Rev. 409, 435 (1987)) (emphasis supplied); see also, 28 AM.JUR.2d, Estoppel and Waiver § 74 (2010) ("a party in a judicial proceeding is barred from denying or contradicting *sworn statements* made therein.) (emphasis supplied) (a copy has been previously filed with this Court at Docket Entry # 7-2).  The Settlement Agreement was not a pleading, affidavit or other sworn statement given by Plaintiff; it was a document prepared by United States Attorney's Office, and Plaintiff was merely a signatory.

Moreover, the alleged prior inconsistent statement is not inconsistent with Plaintiff's current allegations against Vanguard.  At their core, Plaintiff's claims are that but for Defendant's error and admitted mishandling of funds, the $450,000.00 would have been placed into a new account that would not be the subject of the ongoing forfeiture proceedings.  In May of 2007 when Vanguard made this critical error, Plaintiff was well aware of the government's investigation and allegations of illegal gambling against the Company.  Indeed, the government had already specifically identified the 7326 account as property it believed to be subject to forfeiture, and a seizure warrant had been issued for this account.  As such, Plaintiff has never contended that the 7326 account was not subject to forfeiture.  Defendant Vanguard attempts to blur the distinction between the account itself and the subsequent, erroneous deposit of $450,000.00 into that account.  This distinction is crucial.

As set forth in more detail above, during the settlement process, Plaintiff liquidated various assets which were unrelated to his video poker business which was the target of the government's investigation.  After liquidating these assets, Plaintiff wished to establish a new Vanguard account and planned to fund the account with the sale proceeds, his personal checking account and his federal tax refund.  However, Vanguard mishandled the funds and erroneously deposited them into an existing Vanguard account, thus subjecting them to forfeiture.  The terms

of the Settlement Agreement, namely Plaintiff's stipulation that the existing account was subject to forfeiture, is not in any way inconsistent with his current position that the funds never should have been placed into the existing account which was unquestionable subject to a seizure warrant.

Finally, the purported inconsistent statement is not one of fact, but rather, it constitutes a conclusion of law which cannot support the imposition of judicial estoppel. See Tenneco Chemicals, Inc. v. William T. Burnett & Co., Inc., 691 F.2d 658, 664-65 (4th Cir. 1982) (noting the differences between inconsistent statements of fact and inconsistent statements of law); see also, Boyers, supra, at 1262 ("the doctrine of judicial estoppel applies only to factual positions; expressions of opinion and assertions of legal conclusions cannot trigger application of the doctrine."). The alleged inconsistent statement is that Plaintiff's existing Vanguard account was subject to forfeiture pursuant to various federal statutes. Whether property is properly forfeited under these statutes is a conclusion of law that must be determined by the Court based upon an analysis of the facts.

Based upon the forgoing, Defendant Vanguard has failed to establish a prior inconsistent statement by Plaintiff which would support the invocation of judicial estoppel. As set forth below, even if Vanguard could establish a prior inconsistent statement, which it cannot, it has failed to establish the remaining two elements of the doctrine.

    B.    The Allegedly Inconsistent Statement Was Not Accepted By The North Carolina District Court.

To establish judicial estoppel, the alleged prior inconsistent statement must have been accepted by the prior court. Lowery, 92 F.3d at 224; Teledyne Industries, Inc. v. N.L.R.B., 911 F.2d 1214, 1218 (6th Cir. 1990). The insistence upon a court having accepted the party's prior

inconsistent position ensures that judicial estoppel is applied in the narrowest of circumstances. Lowery, 92 F.3d at 224. Vanguard proffers an alleged prior inconsistent statement in the form of a Settlement Agreement and a Plea Agreement. Vanguard asserts that the plaintiff previously represented to the North Carolina District Court that the $450,000.00 at issue here was was related to criminal activity and subject to forfeiture. However, the plain language of the Settlement Agreement makes no such admission, and more importantly, the forfeiture orders executed by the district court make no such finding of fact or reference any such admission. Likewise, the Factual Basis for the Guilty Plea in the criminal proceedings contains no such admission or representation. There is no indication whatsoever that the allegedly inconsistent position contained in the Settlement Agreement was accepted by the North Carolina court for purposes of judicial estoppel. In the transcript of the hearing on the Plea Agreement, the Court "accepted" only the plea of guilty. [Docket Entry # 31-3 at 25].

In similar circumstances, the Sixth Circuit Court of Appeals has held that consent orders that do not contain findings of fact or admissions, do not, as a matter of law, constitute acceptance by the court. Teledyne, 911 F.2d at 1218-19. "Settlements, even in the form of an agreed order, ordinarily do not constitute judicial acceptance of whatever terms they contain." Id. at 1219; see also, Lowery, 92 F.3d at 225 ("judicial estoppel does not apply to the settlement of in ordinary civil suit because there is no 'judicial acceptance' of anyone's position"); Konstantinidis v. Chen, 626 F.2d 933, 939 (D.D.C. 1980) ("settlement neither requires nor implies any judicial endorsement of either parties, claims or theories, and thus, a settlement does not provide the prior success necessary for judicial estoppel").

The facts of this case present an even stronger basis for finding there was no acceptance by the prior court since the Settlement Agreement was not in the form of a consent order and was

not presented to the Court for approval. The subsequent forfeiture orders contain no indication that the court accepted or endorsed the allegedly inconsistent statement. Indeed, there is no reference whatsoever to any admission regarding the source of the $450,000.00 mishandled and erroneously deposited by Vanguard.

Based upon the foregoing, Plaintiff is not judicially estopped to assert his claims against Vanguard. Controlling case law clearly dictates that judicial estoppel applies only when the court accepts a prior inconsistent position, which did not occur here. Thus, even if this Court were to determine a prior inconsistent statement was made by Plaintiff, there is no evidence that such a statement was accepted by the district court.

C.   Plaintiff Did Not Intentionally Mislead The Court To Gain An Unfair Advantage.

The third and final element of judicial estoppel requires a showing that the party sought to be estopped intentionally misled the court to gain unfair advantage. Tenneco, 691 F.2d at 665. This final element is the "determinative factor" in the application of judicial estoppel to a particular case. Id.; Lowery, 92 F.3d at 224. Defendant Vanguard has presented no evidence establishing an intent by Plaintiff to mislead this Court or the North Carolina court in an attempt to gain unfair advantage.

First, there is no indication whatsoever that the plaintiff misled either this Court or the District Court for the Middle District of North Carolina. Nonetheless, to establish the requisite intent, Vanguard points to the plaintiff's deposition testimony to the effect that he never intended to release his claims against Vanguard for its admitted error. However, the plaintiff never made any representations to North Carolina court regarding his plans for future, civil litigation against Vanguard, and Vanguard has failed to point out any such representation. Rather, Vanguard makes the conclusory assertion that "Harrison told Judge Beaty that the $450,000.00 was subject

to forfeiture as proceeds of an illegal gambling operation." [Docket Entry # 31-1 at 13]. Nowhere in transcript of the hearing before Judge Beaty does that representation appear.

Second, Vanguard has not established any unfair advantage gained by the plaintiff. Instead, Vanguard asserts that it is at a disadvantage, as compared with the federal government. All civil litigants, including the plaintiff, are at a disadvantage when compared with the resources and leverage of the federal government. However, such a comparison is not sufficient to establish judicial estoppel.

For these reasons, Plaintiff is not judicially estopped to assert the causes of action alleged in his Complaint. Defendant Vanguard has not established an intent by Plaintiff to deliberately mislead this Court or the North Carolina court or any unfair advantage gained by the plaintiff, and therefore, judicial estoppel is inapplicable as a matter of law.

IV.     PLAINTIFF HAS NOT WAIVED HIS CLAIMS TO THE $450,000.00.

Vanguard asserts a waiver based on the following language contained in the Settlement Agreement filed in the forfeiture proceedings: "each Claimant hereby consents to forfeiture of the defendant properties and *withdraws any and all claims, answers and petitions for remission or mitigation relating to the defendant properties and filed by him/her or on his/her behalf, whether filed administratively or in any of these judicial actions.*" [Docket Entry # 31-1 at 15 (emphasis supplied)]. The unambiguous terms of the Settlement Agreement clearly do not operate as a waiver of any claims the plaintiff may have against Vanguard. Additionally, Plaintiff testified that he did not intend to waive any claims against Vanguard, and he has never signed any document waiving his claims against Vanguard. [Harrison Dep. at 155:23 – 156:24]. More importantly, even if this provision constituted a waiver (which Plaintiff denies), Vanguard is not a party to the Settlement Agreement and cannot attempt to enforce the purported waiver.

Based on the above, the plaintiff has not waived any claims he may have regarding the $450,000.00 erroneously deposited by Vanguard into a seized account.

## CONCLUSION

For all of the reasons herein, the Motion for Summary Judgment filed by Defendant Vanguard should be denied. Plaintiff is not judicially estopped to assert his claims against Vanguard since he made no prior inconsistent statement, and the alleged prior inconsistent statement was not accepted by the North Carolina court. Further, there is no evidence establishing an intent by Plaintiff to mislead either this Court or the North Carolina court. Finally, there exist numerous issues of material fact in dispute which preclude summary judgment.

Respectfully submitted,

TURNER PADGET GRAHAM & LANEY P.A.

Myrtle Beach, South Carolina

November 7, 2011

BY:     *s/ Audra M. Byrd*
**Edward R. Cole**
Federal I.D. Number: 00204
ECole@TurnerPadget.com
**Audra M. Byrd**
Federal I.D. Number: 10163
AByrd@TurnerPadget.com
Post Office Box 2116
Myrtle Beach, South Carolina  29578
Direct Telephone:  (843) 213-5505
Direct Facsimile:  (843) 213-5605

**ATTORNEYS FOR PLAINTIFF ROBERT C. HARRISON**