IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
CIVIL ACTION NO: 4:10-CV-01229-CWH

| | |
|---|---|
| ROBERT C. HARRISON,<br>      **Plaintiff,**<br>v.<br>THE VANGUARD GROUP, INC.,<br>      **Defendant.** | **VANGUARD'S REPLY TO THE PLAINTIFF'S RESPONSE IN OPPOSITION TO VANGUARD'S MOTION FOR SUMMARY JUDGMENT** |

## ARGUMENT

### I. There are no material facts in dispute.

The Plaintiff's Response in Opposition to Vanguard's Motion for Summary Judgment (the "Response") filed by Robert C. Harrison ("Harrison") completely ignores the material facts of this case, none of which are in dispute. They are:

1. By his own admission, the properties Harrison forfeited – including the $450,000 at issue in this case – were subject to forfeiture because they were involved in the commission of one or more criminal offenses. (Dep. p. 30 ll. 12-25).

2. All of Harrison's income from the year 2000 through 2007 was derived from Harrison Amusement Company's criminal enterprise. (Dep. p. 13 l. 14 – p. 15 l. 4, p. 41 l. 20 – p. 42 l. 8, p. 50 l. 11 – p. 51 l. 22, p. 53 ll. 20-25).

3. Harrison confirmed to a federal judge and a federal prosecutor on no less than three separate occasions his assent to the terms of the Settlement Agreement, in which he acknowledged that the funds he now seeks to recover were involved in illegal activity. (Plea Hearing, p. 10, ll. 12-17; Plea Agreement, ¶ 6; Settlement Agreement, ¶¶ 2-4).

4. Harrison concedes that if the assets were, in fact, illegal gambling proceeds, then he has no one to blame but himself for their forfeiture. (Dep. p. 124 ll. 11-14).

5. Harrison fully understood the implications of his decision to forfeit the funds, and he concedes that his decision to do so was not coerced in any way. (Dep. p. 146 ll. 2-16).

These undisputed facts lead to the obvious conclusion that Harrison had no lawful interest in the $450,000. Instead, as Harrison agreed in the Settlement Agreement, the federal government was entitled to the subject property. Absent some legitimate right to the forfeited funds, Harrison cannot now allege that he was injured by their forfeiture. As noted in Vanguard's Memorandum in Support of its Motion for Summary Judgment, a showing of compensable damages is an essential element of each of Harrison's claims against Vanguard. Therefore, all of Harrison's claims fail as a matter of law.

Moreover, in light of the admitted illegality of these funds, it is now apparent that Harrison is asking this Court to give him the benefit of his illegal conduct. Indeed, Harrison would have this Court award to him that which the Middle District of North Carolina already determined was unlawfully obtained. Even more astonishingly, he is seeking this remedy at the expense of Vanguard, whom he readily admits did nothing more than make an honest mistake. (Dep. p. 122 ll. 11-15). The Court must play no role in consummating Harrison's unlawful activity. *Jackson v. Bi-Lo Stores*, 437 S.E.2d 168, 170 (S.C. Ct. App. 1993) ("[O]ne who participates in an unlawful act cannot recover damages for the consequence of that act."). As a practical matter, if the $450,000 was derived from legitimate sources (which Harrison has admitted it was not), then Harrison should have raised the issue with the Middle District of North

Carolina. For these reasons, Harrison is now precluded from manipulating this Court to reap the benefits of his illegal activity.

### II.     Certain immaterial facts require clarification.[1]

Harrison's Response confuses the factual record in this case, presenting an incomplete – and inaccurate – view of several peripheral issues. Although these concerns are not dispositive to the current case, Vanguard believes it is important that the Court have an accurate understanding of the whole record.

#### 1.     The $450,000 is entirely traceable to illegitimate sources.

On pages 6 through 8 of the Response, Harrison discusses three ostensibly "legitimate" sources of funds for the $450,000; however, the Response overlooks the plain testimony from Harrison's deposition regarding these sources. The sources – a personal Wachovia bank account, a tax refund from the federal government, and a $180,000 check written on Harrison Amusement Company's operating account at BB&T – were inarguably funded by the illegal enterprise of Harrison Amusement Company. First, Harrison flatly admitted in his deposition that the source of the funds in his old Wachovia account was Harrison Amusement Company. (Dep. p. 77 ll. 11-19). Second, Harrison readily agreed that all of his personal income – from which his income tax refund was paid – flowed exclusively from Harrison Amusement Company. (Dep. p. 13 l. 14 - 15 l. 4). Third and finally, Harrison admitted that the Harrison Amusement Company operating account – on which the $180,000 check described in

---

[1] Each of these ancillary facts is supported by the testimony of Harrison himself. To the extent they are disputed by Harrison, a party cannot create an issue of material fact by simply contradicting himself. Indeed, "[i]t is well established that '[a] genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of [a party's] testimony is correct.'" *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (*quoting Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997)). Therefore, despite the protestations in Harrison's Response, there is no real dispute over any facts – material or otherwise – in this case.

Vanguard's Motion was drawn – was forfeitable to the federal government *at any time* during Harrison Amusement Company's entire existence. (Dep. p. 47 ll. 16-25).

2.  **Harrison's position before the Middle District of North Carolina precludes his <u>factually</u> inconsistent position taken before this Court.**

On pages 9 through 12 of the Response, Harrison suggests several reasons that he should not be bound by his position in prior judicial proceedings; however, Harrison's arguments are premised on an incomplete picture of the proceedings before the Middle District of North Carolina. For example, Harrison notes that he was a "claimant" – not a party – in the forfeiture proceedings, yet he fails to acknowledge the obvious fact that he *was* a party to the criminal proceedings, in which he pled guilty and agreed to forfeiture in accordance with the terms of the Settlement Agreement. (Plea Agreement, ¶ 6). Further, Harrison asserts that the Settlement Agreement is not a sworn statement and is, therefore, ineffective for purposes of judicial estoppel. This, too, is a half truth: although the Settlement Agreement itself is not a sworn statement, Harrison was under oath at the plea hearing before Judge Beaty in which he ratified the terms of both the Settlement Agreement and the Factual Basis for his guilty plea – both of which discuss the illegal sources of Harrison's money. (Plea Hearing, p. 10, ll. 12-17, p. 15 l. 7 – p. 17 l. 21).[2]

Finally, Harrison seeks to characterize Vanguard's arguments as focused on an inconsistent legal – not factual – position. To the contrary, Vanguard recognizes and agrees that Harrison has consistently taken the legal position that the $450,000 was subject to forfeiture. Critically, however, the *factual basis* behind his legal position has changed. In the forfeiture

---

[2] Moreover, the Settlement Agreement was filed with the Middle District of North Carolina, subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure. In fact, Plaintiff's signature was witnessed by his legal counsel. *See* Settlement Agreement, p. 8. Rule 11, like judicial estoppel, is "aimed at curbing abuses of the judicial system." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990).

proceedings, Harrison represented to the Middle District of North Carolina that the funds were forfeitable because they were related to illegal activity. In his papers filed with this Court, Harrison contends that the funds were clean but subject to forfeiture because of Vanguard's conduct.[3] Whether or not the funds were involved with illegal activity is a factual position, and Harrison's inconsistent statements regarding the facts are irreconcilable: either his own conduct subjected the funds to forfeiture or Vanguard did – Harrison cannot have it both ways.

### 3. The Middle District of North Carolina accepted Harrison's position.

Inexplicably, Harrison claims that Judge Beaty in the Middle District of North Carolina "'accepted' only the plea of guilty" by Harrison. (Pl. Br. p. 13). Similarly, Harrison claims that the Settlement Agreement "was not presented to the Court for approval." (Pl. Br. p. 13-14). These assertions are simply wrong. Harrison fails to note that the Plea Agreement, the Factual Basis and the Settlement Agreement were all noted by Judge Beaty in the course of the Plea Hearing, at the conclusion of which Judge Beaty ultimately accepted Harrison's guilty plea and the related forfeiture. (Plea Hearing, p. 8 l. 12 – p. 9 l. 8, p. 10 ll. 3-17, p. 15 l. 7 – p. 17 l. 21). Moreover, Judge Beaty signed and entered a Certificate of Reasonable Cause in the forfeiture proceedings, a true and correct copy of which is attached hereto as <u>Exhibit A</u>, in which he stated: "Having reviewed the Verified Complaint of Forfeiture, Amended Verified Complaint of Forfeiture, and all relevant records in this case, **the Court hereby finds, pursuant to 28 U.S.C. § 2465, that there was reasonable cause for this forfeiture action**." (emphasis added). Therefore, Harrison's assertion that Judge Beaty did not "accept" the Settlement Agreement is completely inaccurate.

---

[3] Harrison cites no basis for his original position in this litigation that Vanguard's mistake somehow changed the character of Harrison's funds through commingling. Undoubtedly, this is because Harrison admitted in his deposition that the fund were not, in fact, commingled by Vanguard (Dep. p. 103 l. 10 – p. 104 l. 2) and that he himself had commingled them before wiring them to Vanguard. (Dep. p. 52 ll. 3-17; p. 53 ll. 13-25; p. 80 ll. 5-17).

On a related issue, Harrison asserts on page 14 through 15 of his Response that "Vanguard makes the conclusory assertion that 'Harrison told Judge Beaty that the $450,000.00 was subject to forfeiture as proceeds of an illegal gambling operation.' … Nowhere in [the] transcript of the hearing before Judge Beaty does that representation appear." Harrison is correct that this representation does not expressly appear *in the transcript of the Plea Hearing*; it does, however, appear in the Settlement Agreement referenced in the Plea Hearing, which was accepted by Judge Beaty and filed with the Middle District of North Carolina on the same day as the Plea Hearing.

### III.     Waiver requires no element of mutuality.

Finally, Harrison contends in his Response that the waiver of his right to the $450,000 included in the Settlement Agreement was effective only as to himself and the other parties to the agreement – *i.e.*, not Vanguard. This contention incorrectly inserts an element of mutuality or privity into the doctrine of waiver. In so doing, Harrison seemingly confuses waiver with equitable estoppel. *See* 28 Am. Jur. 2d Estoppel and Waiver § 131 (2000) ("Generally, an equitable estoppel must be mutual and reciprocal to be effective."). Of course, a party who knowingly and voluntarily waives a right of ownership in property cannot do so selectively. Harrison's waiver of "any and all claims … relating to the defendant properties" in the Settlement Agreement was effective as to everyone in the whole world – whether or not they were a party to the Settlement Agreement.

### CONCLUSION

Therefore, for the reasons set forth in Vanguard's Motion, the Memorandum in Support thereof, the record before the Court and this Reply, Vanguard respectfully requests that the Court grant it summary judgment as to all of Harrison's claims.

This 15th day of November, 2011.

    /s/ David C. Kimball
Benjamin A. Johnson
Federal I.D. No. 2186
E-Mail: bjohnson@rbh.com

David C. Kimball
Federal I.D. No. 10475
E-Mail: dkimball@rbh.com

ROBINSON, BRADSHAW & HINSON, P.A.
140 East Main St. - Suite 420
P.O. Drawer 12070
Rock Hill, South Carolina  29731
(803) 325-2900

*Counsel for Defendant*